RONALD J. TENPAS
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

KARL FINGERHOOD
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-7519
Facsimile: (202) 514-2583
karl.fingerhood@usdoj.gov

JS6

FILED
CLERK, U.S. DISTRICT COURT

AUG 28 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

"NUNC PRO TUNC"
Effective as of JAN 22 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:00-cv-12471-TJH-JWJx |
| Plaintiff, | **FIRST AMENDMENT TO CONSENT DECREE** |
| v. | |
| ABEX AEROSPACE DIVISION and PNEUMO-ABEX CORPORATION; AIR PRODUCTS AND CHEMICALS, INC.; ALCOA INC.; ALLIEDSIGNAL, INC. (now known as HONEYWELL INTERNATIONAL, INC.); ALPHA THERAPEUTIC CORPORATION; APPLIED MICRO CIRCUITS CORPORA.TION; APPROPRIATE TECHNOLOGIES II, INC.; ARLON ADHESIVES & FILM; ARMOR ALL PRODUCTS CORPORATION; AVERY DENNISON CORPORATION; BASF CORPORATION; BAXTER HEALTHCARE CORPORATION; BOEING NORTH AMERICA, INC.; BONANZA ALUMINUM CORP.; BORDEN, INC.; BOURNS, INC.; BROADWAY STORES, INC.; CALIFORNIA DEPT. OF TRANSPORTATION; CALSONIC CLIMATE CONTROL, INC. (now known as CALSONIC NORTH | |

| | |
|---|---|
| 1 | AMERICA, INC.); CANON BUSINESS MACHINES, INC.; |
| 2 | INTERNATIONAL PAPER COMPANY; WASTE |
| 3 | MANAGEMENT, INC.; UNITED DOMINION INDUSTRIES; CITY |
| 4 | OF LOS ANGELES, DEPARTMENT OF AIRPORTS; |
| 5 | CITY OF SANTA MARIA; COUNTY OF LOS ANGELES; |
| 6 | CROSBY & OVERTON, INC.; DATATRONICS ROMOLAND, |
| 7 | INC.; DEUTSCHENGINEERED CONNECTING |
| 8 | DEVICES/DEUTSCH GAV; DISNEYLAND CENTRAL |
| 9 | PLANT; DOW CHEMICAL COMPANY; FHL GROUP; |
| 10 | FIRMENICH INCORPORATED; FORENCO, INC.; GAMBRO, INC.; |
| 11 | GATX TERMINALS CORPORATION; GENERAL |
| 12 | DYNAMICS CORPORATION; GEORGE INDUSTRIES; GOLDEN |
| 13 | WEST REFINING COMPANY; GREAT WESTERN CHEMICAL |
| 14 | COMPANY; GSF ENERGY, L.L.C. (successor to GSF ENERGY, INC.); |
| 15 | GULFSTREAM AEROSPACE CORPORATION; HEXCEL |
| 16 | CORPORATION; HILTON HOTELS CORPORATION; |
| 17 | HITACHI HOME ELECTRONICS (AMERICA), INC.; BP AMERICA |
| 18 | INC.; HONEYWELL INTERNATIONAL INC.; HUBBEL |
| 19 | INC.; HUCK MANUFACTURING COMPANY (by its former parent |
| 20 | Federal Mogul Corporation); HUGHES SPACE AND |
| 21 | COMMUNICATIONS COMPANY; HUNTINGTON PARK RUBBER |
| 22 | STAMP COMPANY; INTERNATIONAL RECTIFIER |
| 23 | CORPORATION; JAN-KENS ENAMELING COMPANY; JOHNS |
| 24 | MANVILLE INTERNATIONAL, INC.; K.C. PHOTO ENGRAVING |
| 25 | CO.; KESTER SOLDER DIVISION, LITTON SYSTEMS, INC.; |
| 26 | KIMBERLY CLARK WORLDWIDE, INC.; KOLMAR |
| 27 | LABORATORIES, INC.; LOS ANGELES COUNTY |
| 28 | METROPOLITAN |

| | |
|---|---|
| 1 | TRANSPORTATION AUTHORITY; LOMA LINDA |
| 2 | UNIVERSITY; BRITISH ALCAN ALUMINUM, P.L.C.; MATTEL, |
| 3 | INC.; MAXWELL TECHNOLOGIES, INC.; THE |
| 4 | MAY DEPARTMENT STORES COMPANY; McDONNELL |
| 5 | DOUGLAS CORPORATION a wholly owned subsidiary of the |
| 6 | BOEING COMPANY; MEDEVA PHARMACEUTICALS CA, INC. |
| 7 | (f/k/as MD PHARMACEUTICAL INC.); METROPOLITAN WATER |
| 8 | DISTRICT OF SOUTHERN CALIFORNIA; MICO INC.; |
| 9 | MINNESOTA MINING AND MANUFACTURING COMPANY; |
| 10 | QUALITY CARRIERS INC. (f/k/a MONTGOMERY TANK LINES, |
| 11 | INC.); NI INDUSTRIES (a division of TRIMAS, a wholly owned |
| 12 | subsidiary of MASCO TECH); NMB TECHNOLOGIES CORP.; OHLINE |
| 13 | CORP.; OJAI MANUFACTURING TECHNOLOGY, INC.; SIEMENS |
| 14 | MEDICAL SYSTEMS, INC.; PACIFIC BELL TELEPHONE |
| 15 | COMPANY; PACIFIC GAS & ELECTRIC CO.; PIONEER VIDEO |
| 16 | MANUFACTURING INC.; PRINTED CIRCUITS |
| 17 | UNLIMITED; NELLCOR PURTIAN-BENNETT; LONZA |
| 18 | INC.; QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC. |
| 19 | (f/k/a BIO SCIENCE ENTERPRISES); RATHON CORP. |
| 20 | (f/k/a DIVERSEY CORP.); RAYTHEON COMPANY; |
| 21 | REGENTS OF THE UNIVERSITY OF CALIFORNIA; REICHHOLD |
| 22 | INC.; REMET CORPORATION; RESINART CORP.; ROBINSON |
| 23 | PREZIOSO INC.; ROGERS CORPORATION; SAFETY-KLEEN |
| 24 | SYSTEMS, INC. (f/k/a SAFETY-KLEEN CORP.); SCRIPTO TOKAI |
| 25 | CORPORATION; SHELL OIL COMPANY; THE SHERWIN- |
| 26 | WILLIAMS COMPANY; SIGMA CASTING CORPORATION (now |
| 27 | known as HOWMET ALUMINUM CASTING, INC.); SIGNET |
| 28 | ARMORLITE, INC.; SOUTHERN |

| | |
|---|---|
| 1 | CALIFORNIA EDISON CO.; SOUTHERN PACIFIC TRANSPORTATION CO. (now known as UNION PACIFIC RAILROAD COMPANY); HARSCO CORPORATION; BHP COATED STEEL CORP.; TELEDYNE INDUSTRIES INC.; TELEDYNE TECHNOLOGIES INCORPORATED; TENSION ENVELOPE CORP.; TEXACO INC.; TEXAS INSTRUMENTS TUCSON CORPORATION (f/k/a BURR-BROWN CORP.); TITAN CORPORATION; TODD PACIFIC SHIPYARDS; TREASURE CHEST; PACIFIC PRECISION METALS, INC.; UNION OIL COMPANY OF CALIFORNIA; UNITED PARCEL SERVICE, INC.; UNIVERSAL CITY STUDIOS, INC.; VAN WATERS & ROGERS INC. and VOPAK DISTRIBUTION AMERICAS CORPORATION (f/k/a UNIVAR CORPORATION); VERTEX MICROWAVE PRODUCTS, INC. (f/k/a GAMMA-F CORP.); WALT DISNEY PICTURES AND TELEVISION; WARNER-LAMBERT COMPANY; WEBER AIRCRAFT; WESTERN METAL DECORATING CO.; YORK INTERNATIONAL CORPORATION; YORT INC. (f/k/a TROY LIGHTING, INC. TIFFANY DIVISION);<br><br>         Defendants. |

# FIRST AMENDMENT TO CONSENT DECREE

## I.    BACKGROUND

A. On November 24, 2000, the United States lodged a proposed Consent Decree ("Consent Decree") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. with the Court in the above-referenced matter. Notice of the proposed Consent Decree was published in the Federal Register on December 14, 2000. No

4

comments were received in response to the Federal Register notice and on February 23, 2001, the Court entered an Order approving the Consent Decree. Except as expressly set forth herein, the defined terms in the Consent Decree retain their meanings in this First Amendment to Consent Decree ("First Amendment"). Pursuant to the Consent Decree, the Settling Defendants agreed to perform certain work at the Omega Chemical Superfund Site ("Site") and reimburse the United States for Past Response Costs and Oversight Costs. The Settling Work Defendants to the Consent Decree were to perform certain Work at the Omega Site pursuant to the Consent Decree, including conducting an Engineering Evaluation/Cost Analysis ("EE/CA"); implementing a response action within the Phase 1a Area as selected by the United States Environmental Protection Agency ("EPA"); implement a soils Remedial Investigation/Feasibility Study ("RI/FS") for contamination within the vadose zone within the Phase 1a Area; and install certain groundwater monitoring wells as required by the Statement of Work incorporated into the Consent Decree.

B.  Skateland is an indoor roller rink, located at 12520 Whittier Boulevard in Whittier, California. EPA has detected volatile organic compounds ("VOCs"), such as tetrachloroethene ("PCE") trichloroethene ("TCE"), 1,1-dichloroethene ("1,1-DCE"), Freon 11 and Freon 113, inside Skateland. The maximum PCE concentration detected for sampling events inside the Skateland building was 1100 micrograms per cubic meter (ug/m$^3$), which is higher than EPA's screening range of 0.9-90 ug/m$^3$ for long term occupational exposure. Interim mitigation measures were employed after this sampling event and PCE concentrations declined in subsequent sampling events; the most recent PCE concentrations still exceed EPA's screening range for long term occupational exposure. All other contaminant levels did not significantly decline from the initial sampling event. The legal description of the Skateland property is as follows: The Northwesterly 200 feet (measured at right angles to the Northwesterly line thereof) of Lots 1 and 2 of Tract No. 13486,

in the City of Whittier, in the County of Los Angeles, State of California, as per Map recorded in Book 312 pages 16, 17, and 18 of Maps, in the office of the County Recorder of said County, A.P.N. No: 8170-029-024, also known as 12520 Whittier Boulevard, Whittier, California.

C. The Consent Decree did not address indoor air impacts at the Skateland facility, which lies partially outside of the Phase 1a Area, believed to be caused in part by vapor intrusion from the Omega Site. This First Amendment governs a new response action (the "Skateland Response Action," as hereinafter defined) distinct from the existing work under the Consent Decree. The Skateland Response Action shall commence pursuant to the Supplemental Statement of Work ("SSOW"), which is Attachment A to this First Amendment, in accordance with the timetable therein.

D. On December 3, 2004, EPA issued an Administrative Order Directing Compliance with Request for Access (EPA Region 9 CERCLA Docket No. 2005-3) to the owners of the Skateland property (the "Access Order"). This Access Order remains in effect to authorize access to Skateland by EPA and the Settling Work Defendants. On August 3, 2004, the tenant on the Skateland property signed a Voluntary Consent for Access to Property authorizing EPA and Settling Work Defendants to access Skateland to undertake response actions (the "Voluntary Consent").

E. The Skateland Response Action is a new and separate response action from the ongoing response actions at the Omega Site and supplements the ongoing response actions at the Omega Site. EPA believes that it is important to begin the work under the SSOW as soon as possible. The SSOW sets forth the response activities the Settling Work Defendants have agreed to perform as part of the Skateland Response Action.

F. The Parties desire to expand their respective obligations under the Consent Decree to add the Skateland Response Action and to incorporate those responsibilities into this First Amendment. In order to begin the Skateland Response Action without delay, the Settling Work Defendants have agreed to begin SSOW work before the close of the public comment period and before Court approval of this First Amendment, provided the conditions noted herein are satisfied.

G. The Parties recognize, and the Court by entering this First Amendment finds, that this First Amendment has been negotiated by the Parties in good faith, that implementation of this First Amendment will avoid prolonged and complicated litigation between the Parties, expedite the mitigation of the Skateland facility, and that this First Amendment is fair, reasonable, and in the public interest. All attachments to this First Amendment are made an enforceable part hereof.

**THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:**

1. Except as specifically provided in this First Amendment, all provisions and requirements of the original Consent Decree shall be in full force and effect. The Parties agree that all such provisions remain fully enforceable notwithstanding this First Amendment.

2. The definition of "Consent Decree" on page 6 of the Consent Decree is amended to mean "the Consent Decree and all appendices attached thereto, as modified by the First Amendment and all attachments thereto." In the event of a conflict between the Consent Decree, including any appendix thereof, and this First Amendment, including any attachment hereto, this First Amendment shall control. In the event of a conflict between this First Amendment and any attachment hereto, the First Amendment shall control.

3. The Consent Decree is amended to add the following definition: "'Agreement in Principle' shall mean the date the Settling Work Defendants agree

upon the terms of the proposed First Amendment and associated SSOW as indicated by a favorable vote of the Settling Work Defendants in accordance with agreements governing their relationships." Such vote will be conducted as soon as reasonably possible under the agreements governing their relationships once the duly authorized representatives of the Settling Work Defendants have documented their agreement in writing with the terms of the proposed First Amendment and associated SSOW. The vote shall be taken among the Settling Work Defendants and the results communicated to EPA in writing as soon as reasonably practicable, but in no event later than 14 days after the date the duly authorized representatives of the Settling Work Defendants indicated their agreement with the terms of the proposed First Amendment and associated SSOW in writing to EPA.

    4.    The definition of "Statement of Work" or "SOW" on page 8 of the Consent Decree is amended to include the SSOW and all attachments thereto which are attached to the First Amendment as Attachment A.

    5.    The Consent Decree is amended to add the following definition: "'Supplemental Statement of Work' or 'SSOW' shall mean the statement of work for implementation of response activities respecting indoor air impacts at the Skateland facility. The SSOW also includes any future modifications thereto made in accordance with the Consent Decree and this First Amendment. As between the Settling Work Defendants, on the one hand, and the First Amendment Settling Cash Defendants and Settling Federal Agency, on the other hand, the Settling Work Defendants shall have the obligation to perform the SSOW, without prejudice, however, to any rights or remedies the Settling Work Defendants may have against persons other than the First Amendment Settling Cash Defendants or the Settling Federal Agency, and such rights and remedies are explicitly preserved.

    6.    The first sentence of the definition of "Work" on page 9 of the Consent Decree is amended at the beginning to read: "'Work' shall mean the response

actions Settling Work Defendants are required to perform under this Consent Decree and any amendment thereto, including the work required by the SSOW." All references in the original Consent Decree to the Work encompass the SSOW work unless when read in context such reference would be inapplicable as, for example, references to Work tasks or deliverables which Settling Work Defendants have already completed to EPA's satisfaction.

7. EPA desires that the Settling Work Defendants begin work set forth in the SSOW as soon as possible. Settling Work Defendants have agreed to begin the work set forth in the SSOW upon the date an Agreement in Principle is reached. Settling Work Defendants agree that, regardless of the fact that this First Amendment may not yet be approved by the Court, they shall be liable for any stipulated penalties, as set forth in paragraphs 61 and 62 of the Consent Decree, as amended herein. Paragraph 61.b. of the Consent Decree is amended to include the following SSOW deliverables: Task 1, Report on Foundation Testing; Task 2, Response Action Work Plan; Task 3, Final Report, and Task 4, As-Built Drawings, Final O &M Manual, Periodic Reports, and Completion Report. The Settling Work Defendants waive any defenses they may have to the imposition of stipulated penalties due to the fact that the Court has not yet acted on this First Amendment, provided that the United States does not withdraw this First Amendment or the Court does not decline to enter this First Amendment. With the foregoing exception, all other procedures and provisions set forth in Section XX (Stipulated Penalties) or other sections of the Consent Decree that apply to stipulated penalties shall be applicable.

8. The second sentence of Paragraph 19.a. of the Consent Decree is deleted and replaced with the following: "Notwithstanding the foregoing, the term "best efforts" shall not require the payment of any sums of money to any of the past owners or operators of the Omega Property, including but not limited to, Dennis

O'Meara, the Omega Chemical Corporation and any of its shareholders and officers, as well as any company owned or affiliated with such company, shareholders or officers."

9. Settling Work Defendants shall be excused from performance of any SSOW work under this First Amendment for which access is required if the Access Order is breached by the parties thereto, for such period of time until the Parties can re-establish a lawful right to entry that will allow the SSOW work to resume. If the Voluntary Consent for Access to the Skateland facility is withdrawn, Settling Work Defendants shall use "best efforts" as defined in Paragraph 19 of the Consent Decree, as modified herein, to obtain access.

10. Paragraph 82 is amended to add the following sentences at the end of the paragraph: "With regard to claims for contribution against Settling Defendants and the Settling Federal Agency (as defined in this Consent Decree) for matters addressed in the First Amendment, the Parties hereto agree that the Settling Work Defendants, First Amendment Settling Cash Defendants and Settling Federal Agency are entitled to such protection as is provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for matters addressed in the First Amendment, provided, however, that this protection shall be null and void if Settling Work Defendants fail to perform any obligation under this First Amendment. For the purposes of this First Amendment, such First Amendment Settling Cash Defendants are the subset of Settling Cash Defendants identified in Appendix C to the Consent Decree which previously settled their liability for the Work covered by this First Amendment in accordance with certain agreements with Settling Work Defendants, or a subset of such Defendants. Such First Amendment Settling Cash Defendants are set out in Attachment B to the First Amendment. Settling Work Defendants reserve all their rights under CERCLA and any other applicable law for Work performed pursuant to this First Amendment. The protection provided under this

paragraph shall extend to all SSOW work under the First Amendment, regardless of whether any such SSOW work commenced before, during, or after amendment of the Consent Decree."

11. All other privileges, rights and immunities under the Consent Decree that are applicable to the SSOW work under the First Amendment shall extend to, and inure to the benefit of, the Settling Work Defendants, the First Amendment Settling Cash Defendants (as listed on Attachment B) and Settling Federal Agency (as defined in the Consent Decree), regardless whether such SSOW work commenced on, before or after approval of this First Amendment by a United States District Court. Nothing in this First Amendment shall be deemed to modify, excuse or limit the performance or completion of any obligation any party hereto has undertaken in any other written agreement with Settling Work Defendants, or any one or any combination of such Settling Work Defendants, and all such other written agreements shall remain in full force and effect. The parties to such other written agreements retain their respective rights thereunder.

12. All information required by this First Amendment shall be submitted in accordance with the dates specified in the Consent Decree, or the SSOW if applicable, to each of the persons listed below:

    As to EPA:

    Christopher Lichens, EPA Project Coordinator
    U. S. EPA, Region 9
    75 Hawthorne Street
    San Francisco, CA 94105
    (415) 972-3149
    lichens.christopher@epa.gov

      As to the Settling Work Defendants:

Dave Roberson, OPOG Project Coordinator
de maximis, inc.
2203 Timberlock Place, Suite 213
The Woodlands, TX 77380
dave@demaximis.com

13. The following attachments are attached to and incorporated into this First Amendment:

    a. "Attachment A" is the SSOW.

    b. "Attachment B" is the list of First Amendment Settling Cash Defendants.

14. Upon approval by the Court of this First Amendment, paragraph 95 of the Consent Decree shall be amended to add the approved First Amendment and any attachments thereto as "Appendix G."

15. This First Amendment shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the First Amendment disclose facts or considerations which indicate that the First Amendment is inappropriate, improper, or inadequate. Should the United States determine, after a review of any comments submitted, that the First Amendment is inappropriate, improper, or inadequate, the Parties agree to conduct expedited negotiations to address any such concerns.

16. If for any reason the Court should decline to approve this First Amendment in the form presented, this First Amendment is void *ab initio*. The Settling Work Defendants may terminate work begun under the SSOW, and EPA shall be due no sums for any reason under this First Amendment. The original Consent Decree shall remain fully in effect and enforceable.

17. The undersigned representatives of the Settling Work Defendants and the Assistant Attorney General of the Environment and Natural Resources Division certify that they are fully authorized to enter into the terms and conditions of this First Amendment and to execute and legally bind such Party to this document. This First Amendment may be executed in any number of counterparts, and each signature hereto shall be deemed integrated herein as if each Party signed one and the same instrument.

18. The SSOW work obligations set out in this First Amendment and associated SSOW shall terminate upon EPA's written approval of the Completion Report submitted pursuant to the SSOW. Upon EPA's written approval of the Completion Report submitted pursuant to the SSOW the Settling Work Defendants, the First Amendment Settling Cash Defendants and the Settling Federal Agency, as defined in the Consent Decree, shall be entitled to the covenant not to sue provided in Paragraph 71 of the Consent Decree for the SSOW work.

SO ORDERED THIS _____ DAY OF _____, 20___.

_____
TERRY J. HATTER, JR.
United States District Judge

13
**FIRST AMENDMENT TO CONSENT DECREE**

LA\1557939.1

THE UNDERSIGNED PARTIES enter into this First Amendment to Consent Decree in the matter of United States v. Abex Aerospace Division, et al., relating to the Omega Chemical Corporation Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date:

_____
RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
KARL J. FINGERHOOD
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

_____
KEITH TAKATA
Director, Superfund Division
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

_____
STEPHEN BERNINGER
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

## ATTACHMENT B

ABEX Aerospace Division
Armor All Products Corporation
Avery Dennison
Bourns, Inc.
Calsonic Climate Control, Inc. (now Calsonic North America, Inc.)
Canon Business Machines, Inc.
City of Los Angeles, Department of Airports
FPC, Inc., A Kodak Co.
George Industries
Golden West Refining Company
Great Western Chemical Company
Hilton Hotels Corporation for LA Airport & Towers
Hubbell Inc. and Marvin Electric Mfg. Co., Inc.
Huntington Park Rubber Stamp Company
International Rectifier Corporation, for itself and its facility, HEXFET America
Jan-Kens Enameling Company
Kester Solder Division, Litton Systems, Inc.
Kolmar Laboratories, Inc.
Manufacturing Technology, Inc.
Medeva Pharmaceuticals CA, Inc. (f/k/a MD Pharmaceutical Inc.)
Minnesota Mining and Manufacturing Company for 3M/Riker Labs/Camarillo Storage
Montgomery Tank Lines, Inc.
NMB Corp.
Pacesetters Systems Inc./Siemens Corporation
Pacific Gas & Electric Co.
Pioneer Video MFG Inc.
Quad Chemical
Rathon Corp. f/k/a Diversey Corp.
Remet Corporation
Rogers Corporation
Southern Pacific Transportation Co. (n/k/a Union Pacific Railroad Company)
Structural Composites Ind.
Supracote, Inc. (BHP Coated Steel Corp. successor)
Tension Envelope Corp.
Titan Corporation
Tubing Seal Cap/Pacific Precision Metals, Inc.
Vertex Microwave Products, Inc. formerly Gamma F Corp.
Warner-Lambert Company
Western Metal Decorating Co.
York International Corporation